It's a 30-minute case or a 25-minute case? It is a 30-minute case. Oh, and this is for my... I understand. This easel just isn't going to work here because it blocks our view of the attorneys, so... All right, Mr. Clark. Thank you. Colin Clark for Secretary LeBlanc, Louisiana Department of Corrections at OWL. In 2015, this Court ruled that the Eighth Amendment did not require these three death row inmates to be air-conditioned. The Department of Corrections' position in this case is that this Court meant what it said. On remand, the District Court failed to comply with the law of the case. In fact, it adopts a Judge Reveley's 2015 dissent, which read in its entirety, I agree with almost all of the opinion, but I would affirm the injunction which, in principle, only orders the heat index in the Angola death row tiers to be maintained below 88 degrees. And really, the 88-degree heat index is what this case is all about. It is the central issue from which the parties have fought. All other issues are peripheral. On June 10th of 2013, the plaintiffs filed a complaint asking for an 88-degree heat index. They received it. In December of 2013, the District Court enjoined the State to provide facility-wide air conditioning with a maximum heat index of 88 degrees. In 2015, this Court vacated that injunction and explicitly stated no less than four times that a maximum heat index of 88 degrees cannot be maintained, and I will go through each of those four instances in a moment. In March of 2016, the plaintiffs filed a motion to modify the injunction. Their expert had not seen their plaintiffs. There is no change of circumstances as to their health. The basis of the motion to modify this injunction was based in its entirety on the fact that the State's plan, the second plan, did not keep the heat index below 88 degrees. But the second plan was never designed to keep the heat index below 88 degrees. It was designed to implement this Court's case from 2004 in Gates v. Cook to provide free and adequate access to ice, water, cold showers, and individual fans. There is a stipulation, in fact, in this record that during the life of the second plan, the Gates plan, the plaintiffs received those measures and issued no complaints about the heat. Therefore, the District Court erred in December of 2016 when it issued a maximum heat index and enjoined this that the DOC provided in December of 2016. The law of the case and mandate doctrines require this Court to vacate the injunction below. Before you move any further away from the procedural aspects, one thing that struck me reading the briefs and the prior opinions is our Court remanded for the District Court to fashion an injunction consistent with Gates. As I understand it, when the case was back in the District Court, the District Judge ordered, and I want you to clarify this for us, ordered the State to provide a new implementation plan for want of a better term, which seems to me this is the first step towards the Court either through a hearing or through just submission of papers was going to conform to our Court's remand and mandate. I'm not sure what happened here, but it seems that this turned more into a new action. It seemed like a… I'm not through yet. I apologize. It turned into a new action, and it just kept moving instead of a proceeding to implement our Court's mandate. I couldn't agree with you more. In fact, I wish I had… Tell me what happened. Tell me how this got off the tracks. You know, it's interesting, Judge. If you listen to the District Court's quotes, in December of 2015, he says, I cannot order air conditioning. The Fifth Circuit has spoken. But in March of 2016, three or four months later, he says, and I quote, this is Judge Jackson, I don't care about the Gates case, nor am I concerned particularly with fashioning a remedy that's consistent with the prior rulings of the circuit, if those rulings and remedies are not effective in this case under the facts, and I'm paraphrasing here, as I have created them. And I've given you an exhibit with that exact quote. Sometime between December of 15 and March of 16, Judge Jackson believed that he could order air conditioning again. And, Your Honor, I do not understand what happened. Okay. There's several points that you've made that I don't understand. I don't see in the modified injunction an order for air conditioning. So the question I'm going to ask you is your notice to us informing us of the Yates decision tells us that Yates conflicts with Ball One, and therefore rule of order doesn't allow us to construe Ball One to be a remand to look into lesser measures short of air conditioning and then fashion a remedy. Well, I read this record to be that's what Yates, Judge Enlerod on it, Judge Reveley on it, they send it back and they say, Judge, you know, they interpret their own order to be you've got to try lesser measures. And so Judge Jackson has an extensive amount of hearings and he tries the lesser measures consistent with Gates. He doesn't order air conditioning, but he does say you can't let it get too hot. So let me — I have a couple of points I want to make to that. First, he does order air conditioning. In the Ball decision, Ball One, and I quote, this Court said, based on the constitutional violation, the Court issued a permanent injunction requiring the State to develop a plan to keep the heat index at or below 88 degrees Fahrenheit. Effectively, the District Court ordered Louisiana to install air conditioning. And if you read — correct — if you read the December 2016 injunction order, it requires that the Louisiana DOC keep a hole in the door of a certain size with the icy breeze coolers. And the reason why we are enjoined to provide those measures is because they keep the heat index below 88 degrees. In fact, if you read the December 2016 opinion — The icy breeze cooler isn't air conditioning, or is your position that it is? It is. Any device that — any device that keeps the heat index at or below 88 degrees because of mechanical cooling — I guess mechanical cooling might be a better word, which to me is the same as air conditioning. So you're saying the icy breeze units couldn't be ordered because those are air conditioning? Yes or no? Maybe. If they could have been ordered if there was a medical reason for them other than — You aren't challenging reasonableness. You're saying the mandate rule. That's the only argument you've made to us. The issue is, is that the reason why the icy breeze units were ordered, and more importantly, the hole in the door that allows the guard pod central air unit to shoot — I thought the panel specifically encouraged diversion of preexisting air conditioning as a lesser included measure. You're saying they couldn't — he couldn't, as a matter of law, do either one? I'm saying that they couldn't do either one if the point of those measures is to keep the heat index at or below 88 degrees — heat index at or below 88 degrees. At what point could he require a swamp cooler? At what point? Could — at 90? If there was some evidence that, you know, if he was provided a swamp cooler for three hours in the day and that substantially reduced the effects of heat, if there was testimony like that in the record, it — For example, if you look at Professor Balsamo's testimony — I like that thought because that's a reasonableness attack. You're telling us — the only argument you've given us is that the Ball One panel didn't allow air conditioning. Now, the Yates panel, you've acknowledged in your filing, disagrees with that. You tell us ignore Yates because you say it can't conflict. I don't think legally or factually you're correct. Well, factually, I don't see that he ordered air conditioning unless you do what you just did today, which is to say a fan aimed at ice equals air conditioning. But legally, I don't see why you can insist that the Ball remand didn't allow him to look into lesser measures that they specifically encourage. He could look into lesser measures. What I'm saying is that the only thing that was taken off the table was a maximum heat index. If he had ordered — But it broke me from Ball One where it says that. Not from the dissent, from Ball One. In Ball One, I think they say you can't order district courts, superintending, Eighth Amendment, prison overheating, if you order air conditioning regardless of heat index and time and facility-wide. The prosecutor very understandably said those three things. Judge Jackson on remand has not said facility-wide. He hasn't said air conditioning. You disagree? I disagree. I think he said air conditioning, and I think that on that point falls the entire case. Okay, well, then it turns on that. So tell me where in the record we can see what a breezy unit is because I think anybody who's gone to sporting events knows what a breezy unit is. It's a swamp cooler. It's a fan blowing on an ice — Which is exactly what our court said in Gates you should try to use. This court defined air conditioning as maintaining a maximum heat index. So therefore — In Gates and in Ball One, in the Ninth Circuit, I haven't found a circuit yet that doesn't say to construct injunctions in this situation, you need to know a heat measure. Are you saying judges can't tell prison officials, here's the way to know when you need to divert air or you need to aim a fan at them? No, we have no problem with monitoring the heat index. And let me go to the Ball opinion. The Gates court, and there's a quote, did not mandate a maximum heat index applicable in the Mississippi prison. Gates upheld an injunction providing narrow relief, and there is no showing that the Constitution mandated more relief for these prisoners for the same prison condition in this case. I thought in Gates they said specifically if it's over 90, take measures. And we have no problem with the heat index serving as a trigger at which certain remedial measures must be granted. Our problem is providing a ceiling that the heat — He says here the trigger is 88. So the only issue is what are the legitimate lesser measures? And you're saying the mandate rule didn't allow exactly what the panel said he should consider, diverted air? Diverted air would be one thing. If, for example, they require the prisoners to go to cells C1, C2, and C3, which are closest to the door because there's an inch between the floor and the door, and that is about a degree cooler than the back of the tier, that would be okay. Diverted air is okay. Diverted air is okay. The breezy unit is what's not okay. Because of that reason. Is fan over a chunk of ice to keep it below 90 okay? That would be okay if the point of it was not to mandate a maximum heat index. It's the purpose for which it's being given that we disagree with. Because, recall, again, the PLRA requires the most narrow possible relief to prevent, to remediate the constitutional violation. Let's assume, contrary to your position, that the icy breeze is not air conditioning. Just go with me on that as a hypothetical. Then where are we? Then you do or you don't have a problem with setting some sort of a maximum temperature, whatever that might be. Professor Balsamo, in the first trial, as a plaintiff's expert, recommended seven measures, one of them being icy breeze coolers, ice cold towels, showers, et cetera. If that were the district court's order, provide an icy breeze unit, we would have a very different case. I don't even know if the DOC would have appealed. That's not what happened. The DOC was told, you must provide an icy breeze unit, and more importantly to the DOC, cut a major hole in this door and keep it open in order to maintain a maximum heat index. It's the central air unit from the guard pod that is facilitating the cool air. Now, although there is not evidence in the record that would prove this, the DOC has taken the position that the main force in cooling these prisoners is not these little icy breeze coolers. It's the central air in the guard pod that's going through this big hole in the door. Get back a little bit closer to my question. Is it your view under the mandate rule that it's all right or it's not all right for the district court to set some sort of a standard in terms of degrees Fahrenheit? It's okay if that standard, like Gates, is a trigger at which ice water fans, showers are required. That's fine. It's okay for it to be a trigger. It can't be a ceiling. The temperature and the purpose of the injunction, and the 2016 injunction shows that the purpose of these measures, the sole purpose is to keep the heat index below 88 degrees. What's the difference between a trigger and a ceiling? A trigger is— You've got to get the ice out there. Sure. It's the same thing. A ceiling is that the heat index can't get above 88. It can't ever be 89 degrees on the heat index on tier C on death row because of the measures that were required, because it's functionally air conditioning. But if it's a trigger, I'm just trying to follow through. Correct me if I've got it wrong. But if it's a trigger, then it gets to 88, and you start implementing whatever those features are, whether it's an icy breeze or cold water or whatever it is, but the temperature could still rise to any level above 88 or 90, whatever it is. Correct. If the district court said do gates and give each of these guys an icy breeze cooler, I don't think that we would have a mandate. We might have an argument as abuse of discretion, but it wouldn't be a mandate law of the case issue, I don't think. And you don't object to having the trigger at 88? No. We don't object to the trigger being at 88. We object to it being a ceiling that the measures are given to us in order to create air conditioning in one form or fashion. Am I wrong that in Gates, 90 was a ceiling? No, it was a trigger. It was a trigger at which ice, cold showers, water, and individual fans were required. Maybe a way to look at this is the district judge imposed a thermostat. Yes, I believe he did. That is our position. Because he's ordered air conditioning in a very unusual way. Granted, it was because of the DOC's own actions, which should have never gotten to the record, which is a completely different issue. So your logic, though, is hit the trigger, nothing works, you comply? Let's say it goes up to 95. Is there ever a ceiling? There's no. There's never a ceiling. And this court— And you've complied with the Eighth Amendment because once the trigger was hit, you brought ice out or wind or whatever, whether it works or not. We always must respond to the individual circumstances that are on the ground. Today we're only talking about the PLRA and what's absolutely required by the Constitution. What we're saying is that this court took that maximum heat index off the table and ball won. Quote me again the best language. I'll give you four. What I thought integrated in the decision was you can't order air conditioning when you've got no heat index facility-wide. Instead, you've got to first try lesser measures. So it goes down, tries lesser measures, and he says, you only need to do these when it breaks 88. But the court did impose an 88-degree heat index in the 2013 injunction. He made the same order he made in 2013, except he didn't make it facility-wide. As it pertains to us, because we're still required to shoot cold air at the inmates until it's less than 88 degrees as a heat index, it's the same order, only it's using different measures to obtain that lesser reading on the thermostat. So the four separate places are the district court's injunction violated the PLRA in two ways. First, the district court ordered a type of relief, air conditioning. And what we've said here, everybody agrees that this is a creation of a maximum heat index and that the plaintiffs believe there's no other way to correct this remedy but to lower it. The second place is that even assuming air conditioning is an acceptable remedy here, and it is not, it is possible to provide air conditioning solely to these three inmates. So there's language in the opinion that says, look, there's lots of ways to fix this DOC, but we're remanding you with all of these options into the PLRA. You just can't order a maximum heat index. The third place is because the district court's injunction provides an unnecessary Excuse me. Could we please let him finish his answer? Yes, but he made a response to that. You just can't order a maximum heat index? I'm sorry. That was not, that was pontificating. But they do say that. Again, the fourth area, the Gates court did not mandate a maximum heat index. And then later on in the same paragraph, it says there is no showing that the Constitution mandated more relief for these prisoners for the same prison condition in this case. So it said Gates didn't order a maximum heat index. There's no showing that the Constitution required more for these three ball plaintiffs. This Gates paragraph on page 600 of the Federal Third is our case. It's on this board. It's in the exhibit that I sent around. The Gates court didn't mandate a maximum heat index. That is right there. That's our case, that one line. I mean, granted, it says in other places, the one I didn't mention, because the district court's injunction provides an unnecessary type of relief and applies beyond these three plaintiffs, it violates the PLRA. So the plaintiffs are going to get up here and they're going to say, look, the district court said, all right, I understand I can't order facility-wide relief, and he didn't. We all agree that he complied with that piece of the order. But there are two problems that identified in Ball 1 as to the injunction that was issued in 2013, and from our point of view, the 2016 injunction has the same effect as the 2013 injunction. And we think for that reason, it misreads or misapplies Ball 1. To say that the Constitution doesn't require more for the Ball plaintiffs than it did for the Gates plaintiffs, and then for the court to say throughout the record, I don't care about the Gates case, I'm not going to follow the Gates case in this case, because unless I find it to be applicable, just I don't think it misreads Ball 1 fairly. The measure you're saying he ordered that isn't in Gates is just the heat index, right? Yes. Because the high-freezing units and the diversion are. Yes. Your case really reduces to you can't order a heat index. Absolutely. You can order a heat trigger, but not a ceiling. Correct. And that's somewhere in the Ball 1 mandate? The mandate says reform the injunction with the principles stated in here. So mandate and law of the case are going to functionally operate to the same extent in this case. But I don't see how this Court can look at this line that says that the Gates plaintiffs and the Ball plaintiffs are constitutionally the same. The Gates plaintiffs didn't have a heat index ceiling, a requirement of air conditioning. I don't see how that obtains under the PLRA. Is it a permissible way to? You're saying summer months only? Yes. Because that's the only time where it would get above 88 degrees on the heat index. He could have said you have to do breezy units and diversion June to October in Louisiana. He couldn't say you've got to do breezy if you hit 95 degrees or 106. That's forbidden by the mandate and the other isn't? Yes. One is forbidden by the mandate and the other isn't. We might have argued that providing the icy breezy units was an abuse of discretion because of the evidence, but we didn't make that argument. We're not here on that. We're only here on the maximum heat index. What was your argument about Yates? Could you elaborate on your 28-J letter? You know, I actually read and reread and read this line again, and I guess there are two ways to read it. Here's the statement from Yates. Ball held that air conditioning was not appropriate in that case because other acceptable and less intrusive remedies had yet to be tried, not that air conditioning was necessarily an impermissible remedy. If the court in that case meant air conditioning might be permissible in other situations, not at issue in Ball, I have no problem with it. But the way I read it when I first read Yates is simply because of these words, had yet to be tried, which to me implied that if the court found that lesser remedies did not satisfactorily remediate the heat, that he could order air conditioning again. And I think that the former reading is permissible and the latter is not. So again, assuming again for the sake of argument that the icy breeze is not air conditioning, summarize for us what the last paragraph of an opinion would be to Judge Jackson telling him how to change what it is that he previously ordered. Judge Jackson, the Fifth Circuit says you may not order a maximum heat index. If you want to order icy breeze units, we have not said one way or the other remand and fix it, but you cannot order a maximum heat index. And we can go back down as much as I hate that thought to go through another evidentiary hearing. But you could theoretically send this case back and say, look, Judge Jackson, you can't order a maximum heat index. That's what we said in Ball 1. If you find that the icy breeze units are required by the PLRA, that they provide some medical benefit that is so important that it's required by the Constitution, I suppose that would be a permissible way to resolve this case. And with that, I'll leave my, the rest of my time. All right. Thank you, Mr. Park. You saved time for rebuttal. Mr. Vora? May it please the Court, my name is Neelay Vora. I represent Mr. Ball, Mr. Code, and Mr. McGee. This appeal presents the question of whether the district court abused its discretion when it ordered the implementation of some of the remedies that were explicitly required to be considered on remand and that this court found and stated were consistent with both the Prison Litigation Reform Act and Fifth Circuit precedent. On remand . . . If the district court, if we were to determine that the district court violated the mandate rule, that would constitute an abuse of discretion, would it not? Your Honor, I suppose that is, honestly, I think that's kind of a tautology. If it violated the mandate rule, obviously it abused discretion, it abused its discretion, but the issue is whether it abused its discretion and whether, pursuant to that, one of the inquiries is whether it violated the mandate rule. The specific instructions which I was about to get to, Your Honor, in determining whether it violated the mandate rule, in Judge Jones's opinion, for the majority, the district court was specifically ordered as follows at page 599 of the opinion. Defendants could divert cool air from the guards pod into the tiers, allow inmates access to air-conditioned areas during their tier time, allow access to cool showers at least once a day, provide ample supply of cold-drinking water and ice at all times, supply personal ice containers and individual fans, and install additional ice machines. These are precisely the types of remedies that this Court endorsed in Gates v. Cook and that the Prison Litigation Reform Act requires. Accordingly, on remand, the district court must limit its relief to these types of measures. How do you have that exist with Judge Jones's statement at page 600 of the opinion? Finally, we note the substantial disparity between the relief ordered in Gates and the scope of the injunction in this case. The Gates court did not mandate a maximum heat index applicable in the Mississippi prison. It required particular heat measures, including fans, ice water, ice, and showers, if the heat index reaches 90 degrees or above. The injunction here requires relief that is far more extensive, etc., etc. That's the problem we have here. There is some language in Ball One, no doubt, talking about different types of remedial measures, but Judge Jones centers in on this ordering a maximum heat index. And that seems to me the key to this appeal, whether or not the district judge in his remand imposed a maximum heat index, which he did, which is contrary to what Judge Jones said at page 600 of the opinion. The rest of that portion of the opinion, Your Honor, and the part that you didn't quite get to, states that the district court must order relief that is more closely aligned with Gates. If the words more closely aligned with Gates have any resemblance whatsoever to endorsed in Gates v. Cook earlier in the opinion, then it must be the case that the district court cannot have abused its discretion when it ordered remedies that were specifically stated to be compliant with Gates v. Cook. I'll read the rest of what she said. The injunction here requires relief that is far more extensive, applies even during months when there is no heat risk to the plaintiffs, covers the entire facility, and, of course, is expensive. Since Gates upheld an injunction providing narrower relief, and there is no showing that the Constitution mandated more relief for these prisoners for the same prison condition, in this case, on remand, the court must craft relief more closely aligned with Gates as well as consistent with the PLRA. That's the entire paragraph. Yes, Your Honor, and those last words that you stated are precisely similar to the statements at 599 of the opinion that they must craft relief more closely aligned to Gates. Earlier in the opinion, she states that these are precisely the types of remedies that were endorsed in Gates v. Cook. She expressly said that, not mandate a maximum heat index. Your Honor, there is nothing in the second plan or, sorry, the third plan that mandates a heat index. There is a trigger at which point the prison is required to open, to put a hole in the door. That defendants are enjoined to implement the remedial measures under the third plan during any period in which the heat index in the death row tiers exceeds 88 degrees Fahrenheit specifically. And then he goes through all these measures, including air conditioning. No, Your Honor, the air conditioning is not one of the measures that was required by the district court. That's not what's in the third plan. At 88 degrees, there is a requirement that the diversion of cool air occur through the placement of a hole, which you can see on page 7 of our brief, what exactly that hole looks like. I want to be clear, because Mr. Clark described that as a major hole. You can look at the exact hole that was placed into that door. It's not a major hole. It is a hole that existed, that the defendants chose what size it was, that there's extensive evidence in the record as to the nature of the hole in that door and whether it could be smaller. And that is the extent to which the existing, preexisting air conditioning not new in air conditioning, but preexisting air conditioning. Judge Jones's opinion, let me be honest with you, Judge Jones was correct that the air conditioning, new installation of air conditioning was not in fact required in order to remediate the Eighth Amendment violation for these three prisoners. We were in a position at the time of trial, and the Fifth Circuit precedent requires that the prison be provided full self-determination in figuring out a remedy to the extreme heat problem. At the time of the first injunction, the prison suggested that they wanted to air condition the entire facility because they wanted to have the ability to move these three prisoners anywhere in that death row facility. Subsequent to this Court's remand, we are now in a position where the prison has to do one of the specific or a combination of some of the specific remedies that were instructed and that were that this Court instructed the district court to limit itself on remand. And so we are now in a position where this is not the installation of new air conditioning. I agree, Judge Barksdale, that if this had required some sort of installation of new air conditioning, that that would be problematic and might very well violate mandate. But in this situation, this is a preexisting air conditioning that was in existence that Judge Jones specifically stated for the majority, for all three judges, although Judge Reveley would have upheld the original injunction. But just because it uses the preexisting air conditioning, it doesn't mean that it violates the endorsement and the statement that it is permissible to divert preexisting cool air. That's what the remand instructions state. All the measures are okay. They're consistent with Gates and Ball One. In fact, they've been encouraged. IC units, diverting of preexisting AC. As I understand the argument today, it is refined down to just you could never impose an exact thermometer number because there's a distinction between a trigger and a sealant. So my question to you is, do you see that in any of our case law that's relevant, Gates, Yates, or Ball One, and do you know that any circuit or district court anywhere in the country has said there's a distinction between a trigger and a sealant? I think there are two questions there, Your Honor, and I'll try to answer them in order, but forgive me if I mix them up because they are related. As to the first question, I do not believe that there, I think there is some distinction between a trigger and a sealant. And I think that in this situation, all of this boils down to, at the end of the day, the adequacy of the remedy. And I want to make clear to the Court that in this Court's opinions in Gates, or sorry, in Ball v. LeBlanc One, as well as every decision that has come subsequent to that, Webb v. Livingston at footnote seven, in Hinojosa v. Livingston, and in Yates v. Collier, every single one of these decisions has stated that you need to examine the adequacy of the remedy at the time that the Eighth Amendment violation exists. It's important to note in this record that the defendants, the prison, had all opportunities to present and to come up with, at the time of the original proceedings, it was three years, and right now as we stand here today, it's about four and a half years. They have had every opportunity to try to craft any kind of remedy that they would want to do, and they have consistently admitted that they have no evidence that the adequacy of their second plan, which was to provide the Gates-type remedies of ice, a cold shower, cold drinking water. If you look at it, and I specifically would like to direct the Court's attention to Record on Appeal 9024 and Record on Appeal 8908. Those are two places in discovery where they admit they do not have, they effectively admit, that they do not have any evidence, scientific, medical, or otherwise, any evidence that anything else would work. They have admitted that they have no evidence that anything else would work. This is the first time in four and a half years today, this prison was built in 2006. Mr. Ball, Mr. Cote, and Mr. McGee have been incarcerated there since 2006 with these types of conditions until this last remedy was implemented, and this is the first time now that we have a remedy that's been effective. And so at this juncture, yes. Now, your second question, if I may, Judge Smith, I believe there was a two-part question here. The second question as to whether there is any court that has established a maximum heat index of any sort, yes, in Graves v. Arpaio, there was an establishment that by the Ninth Circuit of a maximum of, I believe, 85 degree Fahrenheit temperature in that case. In Jondell v. Burge, there was effectively a settlement that required a maximum temperature, and then there was a dispute as to the mechanism that would be used, but ultimately the Seventh Circuit required that air conditioning be installed. In the Seventh Circuit and the Second Circuit, I believe we cited these cases in our principal brief. Unfortunately, I don't remember the names off the top of my head, but there is also a similar requirement that heating be used when it is too cold, because all of this at the end of the day boils down to how do you address the cause of the Eighth Amendment violation, and does your mechanism for addressing the cause of the Eighth Amendment violate substantial risk of serious harm? Roberts. My follow-up is, having heard them today, besides the fact that no one wants to prolong this, what would be wrong for a remand to allow Judge Jackson to say he meant trigger, not sealing, or even better, just accept the Department of Corrections view that it could be June to October? You have to use the breezy unit since — I don't believe that there is a need for a remand to clarify that, because I think that the injunction is clear already. The injunction states that there is a trigger at 88 degrees, at which point a serious risk of substantial harm begins to occur, and that at that point you have to take adequate remedial measures, and these are the measures that I'm specifically requiring that have now been deemed adequate following several evidentiary hearings. That's the case. There is no — You're wanting to be a good advocate, but I'm trying to be polite to you and not interrupt you. But if you cannot have a heat index over 88 degrees, that's prescribed, that's enjoined. Then you have to keep the thermostat that I like to think of as the thermostat in my house. Once it reaches 88 degrees, that air conditioning kicks in. Air conditioning is required in this mandate. They've got to use the air from the pod, which is air conditioning, into the unit to keep this temperature no greater than 88 degrees. That's what's at stake here, this maximum heat index. And that's what Judge Jones said you cannot require. I do not believe that Judge Jones — I don't see anywhere in the Gates v. — sorry, the Ball v. LeBlanc opinion where Judge Jones says you may not require an 88-degree heat index, that the district court effectively ordered air conditioning. It turns out that installation of air conditioning wasn't necessary to achieve an 88-degree heat index. It turns out that you could merely divert air-conditioned air from the guard's pod or take any other several remedies that would be — that would work. But even if that were the case, Judge Barksdale, the question remains and the requirement for this Court and all federal courts pursuant to Supreme Court precedent is to require adequacy of the remedy. And there is no evidence that some lesser measure would be adequate. Let's talk about adequacy of remedy. Do you accept or not that a remedy could be adequate using all of the means that we've talked about, the icy breeze and the cold and all those sorts of things and the air from the pod, taking all those things and making them available? Do you accept that a remedy would be adequate if all of those measures were triggered at an 88-degree heat index but with the reasonable expectation that routinely the actual heat index would rise substantially above that despite the difficult question to answer, Judge Smith, because I don't know that based on what's occurred so far, if those measures are implemented, then the present situation is, in fact, that there is — this is — I'm not sure that I understand the question, honestly, Judge Smith, because the problem is that the requirement to do all of those items that you've just described, you know, the icy breeze units, the diversion of the air conditioning, that requirement only happens when the heat index exceeds 88 degrees on a tier on which Mr. Ball, Mr. Cote, or Mr. McGee are incarcerated. And so, yes, that would be an adequate remedy, and we believe that is an adequate remedy, and that's actually the remedy that's up here on appeal right now. I don't want to be overly lengthy in my answer. Sir? Excuse me. What did you say? I just didn't — I just wanted to go turn to another issue if that answer had been done. Okay. Go ahead. Sure. The narrowly tailored issue is something that the PLRA requires, and that was also an important part of Judge Jones's opinion. And again, in Brown v. Plata, the narrow tailoring states that what's required is a fit between the remedy's ends and the means chosen by the prison to accomplish those ends. Here the ends are ending the high temperature and high humidity. This Court itself has recognized that when you are in a situation where a prison has consistently had opportunities to remedy an Eighth Amendment violation, it is important to address the causes of that Eighth Amendment violation. And so, again, to the extent that there is an issue with respect to an 88-degree heat index, that issue is because the heat and humidity are too high, and therefore, what's required is to address the cause of that. I'll give you an example. In Alberti v. Clevenhagen, this Court found that there was — this Court affirmed an Eighth Amendment violation of excessive amounts of prison violence, and they found that the cause of that violation was a lack of supervision by the prison guards. The solution that this Court affirmed as far as an injunction goes is to increase the amount of supervision in the prison. And similarly, in Brown v. Plata, there was a finding that the cause of the violation of an inadequate provision of medical care was in fact — was in fact caused by overpopulation and overcrowding of the prisons. In Brown v. Plata, then, the Supreme Court upheld a 137.5 percent population cap, which again addressed the cause of the Eighth Amendment violation, namely overcrowding, and subsequently allowed the prison full self-determination to determine how to achieve that 137.5 percent. If you were here on the initial appeal, your argument would have effect. But you're here on the question of whether the district court has obeyed this Court's mandate. You're here on whether the district court obeyed the law of the case, a very serious policy. And that's what I'm trying to key on, because there might be better remedies than what Judge Jones and the panel ordered, but that's what they ordered, and that's what we've got to decide, did the district court comply with? We're here on the mandate rule. Yes, Your Honor. We are here on the mandate rule. We are here to determine whether there are other alternative, narrower remedies that might satisfy the situation other than the diversion of cool air, the provision of an icy breeze unit, and the other remedies that were enumerated by the district court and that are now part of the injunction. I want to make clear to the Court, however, that Gates v. Collier made clear that this was that Gates, that, excuse me, not Gates, Ball v. LeBlanc, one, vacated the air conditioning requirement in order to make sure that narrower remedies might be tried. I don't know that it's clear from the record because it's so extensive, but I would like to direct the Court's attention to the fact that there were other remedies that were narrower than this that were considered and ultimately were not adopted by the prison. If you look at the record on appeal at 9035-36, there was a consideration of a cool roof coating that would have had the effect of cooling the roof and therefore minimizing the amount of heat load on the prison facility. That was rejected. There was a potential for moving these prisoners to Camp F, which is the holding cells prior to the execution chambers, because that is a preexisting air-conditioned facility. That was rejected. That's in the record on appeal at 9886. And these are examples of even more extreme measures that were considered, but that were similar to the ones that Judge Jones, in her opinion, suggested, namely, providing these prisoners with some amount of air conditioning every day. And for that reason, Judge Barksdale, we do not believe that this is some sort of a radical remedy. I'd like to also add, Judge Barksdale, that the prison always has, because of the Federal court's obligation to constantly be open to modifications of the injunction, if there is another remedy that is narrower, then the prison is welcome to present that in the motion to modify the injunctive relief. And Judge Jackson has an obligation under Supreme Court precedent and this Court's precedence to modify the injunctive relief if he makes a finding that there is an alternative, adequate remedy that provides less of an intrusion and less of a burden on the prison. But on this record, at this time, we are here on an affirmed Eighth Amendment violation that for the first time has been remedied in a manner that was explicitly endorsed by Judge Jones and by this Court's first opinion. And therefore, I don't believe that there is a violation of the mandate rule. If the judge, if Judge Jackson ultimately did, what the district, what Judge Jones required? Would there be common ground if there were a revision to conform to exactly Judge Jones's words, where she writes, the Gates court did not mandate a maximum heat index applicable in the Mississippi prison. It required particular heat measures, including fans, ice water, ice showers, if the heat index reaches 90 degrees or above. Would it be some common ground between both of you, in your opinion, if we were to say, DOC accepts breezy units, it accepts diversion, but only, quote, if the heat index reaches 88 degrees or above. Would you have a difficulty with that? I don't think they would, because that's the exact language Judge Jones uses. I believe, Judge Higginson, that's also the exact same language that Judge Jackson uses, which is that when it goes above 88 degrees, you have to do diversion of air conditioning and engage in these other, these other remediated measures. That's exactly the order that we're here on appeal with. And so, I'm not sure if I understood the question, Judge Higginson, but . . . The subtlety that I'm understanding that's been raised is there's a difference between always stopping it at 88 and the measures that are legitimate and encouraged starting at 88. I think that's the distinction that's being drawn. You know, and if they're in good faith and the breezy units work, it hits 88, they get to start. They don't just suddenly get in and presumably, if those things don't work, you'll be back in court. At the risk of making the prison's case for them, the problem in that situation might be that there, that that remedy would not be necessary at that point, which would then make it violate the Prison Litigation Reform Act. The Prison Litigation Reform Act, as you're aware, requires the remedy to occur only when it is necessary, and the time at which it is necessary is when the heat index goes above 88 degrees because that is an affirmed finding, again, based on expert opinion and extensive evidence in the record, as well as public health guidelines and medical research and scientific evidence, that 88 degrees is the time at which the relative risk becomes so severe that there is an Eighth Amendment violation. That's a finding that was affirmed by this Court in Ball v. LeBlanc I, and that was, again, subsequently recognized in Yates v. Collier. Let's keep referring to Yates. Yates concerned class certification, and we have a rule of orderliness in our Court, as I'm sure you're aware, that a subsequent panel cannot change what a prior panel holds unless there's a change in the law in a non-blank decision. So you can keep citing to Yates, but Yates is not, is not the mandate of the district court after saying the implement measures under the third plan during any period in which the heat index in the death row tiers exceeds 88 degrees. Specifically, when the heat index in the death row tiers in which plaintiffs are confined exceeds 88 degrees Fahrenheit, among other things, you have to have the air-conditioned air flowing into this confined space through use of these plastic curtains. That means as long as it's 88.1 degrees, that air-conditioning has to be running into that, into that space. Do you agree? I think so, yes. Well, then that's just maintaining air-conditioning as long as it's 88 degrees. That's the, that's the ceiling, not the trigger. I respectfully disagree, Judge Barksdale. I think that if you're going to figure out how to remedy a serious risk of substantial harm that occurs at the level of 88 degrees, then at 88.1 degrees, the question is, what can we do and what is an adequate remedy to remove that serious risk of substantial harm? If it's 88.1 degrees and all you need to do is cool it to .1 degrees, then you can use an anti-breeze unit to do that. If there's another measure that the prison wants to come with at 88.1 degrees, then there's a measure that they can use to do that. But for all practical purposes, Judge Barksdale, if we were required at 88 degrees, that being the trigger to remediate this to a level that solved the constitutional problem and the prison chose to install it, this is a, this is a plan that they chose to, to do in order to remedy the Eighth Amendment violation. I know there was questions. Was this plan what they were experimenting with, with the other side in trying to reach a common ground, this, quote, third plan, close quote? That was the district court's term for it, third plan. I understood this was simply good faith on both sides to try to reach a solution. Yes, Your Honor. It, there was an effort to try to settle the case and figure out if there was some sort of a remedy that would be adequate, and it turns out that this was, in fact, adequate. And so the question that was presented with respect to it being a settlement discussion, if I may address it, this Court's own precedent in Lyondell states that, that you are not able to put data that is, that is covered by a settlement privilege and have that data be privileged, pursuant to the settlement privilege, even if you're going to experiment with a that the fact that they were experimenting and what they were experimenting with was somehow privileged. But even if it were, the district court was aware of what the remedial measures were because they sought permission from the district court to engage in precisely these types of experiments. So, Judge Barksdale, I think if I understand your question correctly, yes, there was an effort to resolve the problem. And, in fact, we have resolved the problem, and we are here on an appeal from a resolved problem and a resolved Eighth Amendment violation. That Eighth Amendment violation, again, has been affirmed to have occurred that the serious risk of substantial harm to the health of Mr. Ball, Mr. Code, and Mr. McGee occurs when the heat index rises above 88 degrees, and therefore there must be some adequate remedial measure that occurs at that time. In this case, the adequate remedial measure is the diversion of existing cool air. I understand, Judge Barksdale, that you may believe that Judge Jones barred any form of air conditioning at all, but I think that's inconsistent with some of the other enumerated remedies. If that were the case, then why would Judge Jones have stated that they could move them from an area, that they would remove them from their cells and put them into an air-conditioned area during — for a few hours per day if that would resolve the violation? I think that Judge Jones's opinion, in the first majority opinion in this case, states that you have to do something that is adequate to resolve the issue. They understood that the cause of the Eighth Amendment violation was the extreme heat and humidity, and they had — they were going to require a narrower way of addressing that heat and humidity other than the first plan. I think it's important to remember that the first plan was the installation of facility-wide air conditioning, which was obviously significantly broader than what this plan does, which is — again, if you look at the page 7 of our brief, of the appellee's brief, it's a hole in the door that they can choose the size of. There's extensive evidence in the evidentiary record for the — for the size of the hole, that you could change the size of the hole in the door if there's a security concern. There's really not a lot of administrative burden here. I see that my time is running short, and I'd just like to end, again, with this issue on the modification. I understand that there is — that there is some concern here that the 88 degree is placing a burden on the prison. This is the first time since 2006 that we have had a remedy to an ongoing affirmed Eighth Amendment violation that could cause a serious risk of heat-related illness that could result in paralysis or even death, and the modification opportunity for the prison is something that this Court should consider in its remand instructions that Judge Jackson already has an ongoing obligation to do, consistent with Brown v. Plata and Horne v. Flores, Supreme Court precedent, that Federal courts must remain open to modification. If there is, in fact, a narrower remedy that could occur, the prison is always welcome to come forward with evidence that there is another narrower adequate remedy. But at this stage, having had four evidentiary hearings, having been litigating this case four and a half years, now is the time to uphold and affirm this injunction with instructions to Judge Jackson, to the extent that there are going to be remand instructions, to continue to remain open to alternative adequate remedies, while at the same time maintaining the Federal court's duties to make sure that whatever remedies are ultimately implemented are, in fact, adequate, consistent with Brown v. Plata's statement that Congress did not and could not in the Prison Litigation Reform Act leave prisoners without a remedy. All right. Thank you, Mr. Vora. Thank you, Your Honors. Mr. Vora, can you take time for rebuttal? Yes, Your Honor. I heard Mr. Vora say that the 2016 injunction does not require a maximum heat index. If I heard him correctly, that would be inaccurate. I would refer the Court to pages 12694 and 12695 of the record. But more importantly, 12717. And in that page, what it says is that there might be a mold problem in the guard pod. If there's a mold problem in the guard pod, the DOC can seek leave of court to seal the door vent. And in that case, and I'm going to read verbatim, defendants are enjoined to seal the air vent and provide a sufficient number of the portion of Tier C in which the plaintiffs are confined below 88 degrees Fahrenheit. It's very clear that he ordered a maximum heat index. And, Judge Higginson, I want to be clear. I'm not saying that the DOC is agreeing that the icy breeze units are required by the PLRA. What I'm saying is that an order of icy breeze units is not necessarily prohibited under law of the case, that there could theoretically be an order of icy breeze units. The problem of law of the case is that the fact that the icy breeze units are used in order to maintain a maximum heat index. So on remand, if there was evidence to suggest that the PLRA requires one icy breeze unit per plaintiff, that's not covered by law of the case. And we may object to that at that time, but that's not our issue here. So while you identified a position between both parties, I don't know if that's really common ground, unfortunately. And we did try this. We had a human Judge Higginson asked a good question of Mr. Vora, something to the effect, would he have a problem with our just repeating the language from Judge Jones's opinion about what could and could not be done? And I think I heard Mr. Vora say he would not have a problem with that. I'll ask you the same question. Would you have a problem with that? Not at all. But more importantly, the DOC, and there's evidence in the record to suggest we have something like 39,000 prisoners, the DOC cares quite a bit about this Court's decisions, issues upon which hiring decisions, budget issues, any vast majority of issues are made. When this Court tells us to do something, it's very important we do it. And we absolutely understand it. So if this Court is telling me we're going to say the same thing again, we welcome it. We welcome it because that is what we maintain, what we try and do is to follow this Court's precedent because we care about it. Now, as to Federal Rule of Evidence 408, my opposing counsel referenced the Lyondell case, which we cite on page 17 of our reply brief. That case dealt with a chemical spill and two chemical companies who had liability. There was something called the Smythe Report, which one company said this number of chemicals dumped was ours and this number of chemicals was yours or other parties. The Smythe Report was prohibited from entry as a matter of Federal Rule of Evidence 408. So the fact that my opposing counsel said that Lyondell somehow stands for the fact that data cannot be prohibited from entry under 408 is not true under the very case he cites. My opposing counsel also said that there's no evidence in the record to begin with to maintain what was said in Ball 1. And what Dr. Vassallo, the plaintiff's expert, said in 2013 was that unabated access to ice and cold showers would appropriately decrease the risk of worsening medical conditions. But what she said is that they don't go far enough. They don't go far enough. And what Judge Jones said in her Ball 1 opinion is that, look, we understand that there's always going to be some risk. It's dealing with what is the appropriate amount of risk. And this Court determined what the appropriate amount of risk was as to these plaintiffs in this case. And so that risk was told to us as to follow Gates and whatever other measures are medically necessary under the PLRA, and that's not what happened here. We were told to follow Gates and measures somewhat similar to it. The Court veered way off into the ether to order a maximum heat index, the very thing we appealed the first time around. So we ask that this Court reissue the Ball 1 opinion to us. We welcome it, and I thank this Court for its time. Thank you, Mr. Clark. Your case and all of today's cases are under submission, and the Court is in recess until 1 o'clock tomorrow.